along 2015-2019 recent attendance. TomTom, Inc. v. Adolph. Allen Captain Good morning, Your Honors, and may it please the Court. We are here today to talk about claim construction again. In this particular case, we have four basic claim construction issues that have been appealed. Two involve the preamble. This is a purpose preamble reciting the intended use of the technology. The district court construed the purpose preamble to be a substantive limitation. This is not correct in view of the intrinsic evidence. The third issue relates to the question of note. It's a term of art used throughout the specification as well as in Claim 1 in several locations. Can I just go right there? Certainly, Your Honor. The law has changed since this case was briefed. You know, the Teva case came out. Is there anything in the intrinsic record that tells us what a note is? There is, Your Honor. There's multiple locations. And where would that be? The claim itself. The claim uses the term note several times as well as the specification, particularly columns 9 and 10, where it talks about notes in the context of collecting travel distance data as well as section 10. Well, but I think there's two parts to my question, I guess. We know what a note is in a plain meaning sense, but the claim construction says that a note is a place where there has to be a directional change, and that's one of the things you're not happy about. Where in the intrinsic record is there any indication that a note can be a place where a straight line continues? Again, Your Honor, in columns 9 and 10, particularly in the context of travel distance data, where it talks about collecting data at predetermined time intervals. Of course, that would include situations in which the mobile unit is traveling in a straight line. You're going absolutely straight, and every 10 minutes or so there's a data point. It's actually much faster than that. Much faster than that, sure. Right, every second or five seconds. Right, right. So that's just one example. So we don't need to look at any intrinsic evidence here? No, and in fact the court did not below. I should note for Your Honor, in light of the question about Teva, when we get to the storing device issue, there was an underlying dispute about the term storage device. And Tom Tom argued that expert testimony was relevant to this issue. Dr. Adolph provided a technical definition. The court ultimately said the ordinary meaning controls, and it adopted that technical definition. So there was a disputed factual question about storage device. However, that particular question, what the term means, has not been appealed. Rather, we're talking about the articles that precede that term, and Tom Tom is arguing it's indefinite. We're saying there's no But to answer my original question, there's plenty of intrinsic evidence about node, and you're just saying the district court got it wrong. That's correct. What the court did is it chose particular embodiments that are only related to section data. And in fact, it only chose one of those embodiments in the same description, and it decided to import that language into the claim. What that has done is it has read out other node embodiments that are actually already in the claim. And in particular, the nodes that are collected and involve travel distance data, they're collected at predetermined time intervals. As I understand the invention, what it lets somebody do is effectively hack, in the old sense of the word, that is, go off the trail. And it does that by gathering data which places the user or whatever vehicle in time as well as place so that the user, the machine, knows that it is being tracked every second to create a map. But to raise another question here, the way I read it as well with the distinction that was made before the examiner is it doesn't refuse a map. That is, it can be used with a map loaded onto the machine. It simply allows the user to go off the mapped area. That's correct, and I think your honor is referencing the discussion regarding Sado and distinguishing Sado. So the problem is the Sado reference requires a preexisting map loaded, and then the data is compared to that map. So for instance, if you're in a location, that map doesn't recognize, that technology doesn't work. And likewise, if there's no initial database, it doesn't work. In contrast, our technology can collect the information as described in the body of Claim 1 regardless of whether a map is there or not. Am I correct then that in light of Sado, TomTom says, well, we have maps. And the way I understand your argument is that you're creating maps back in Amsterdam, and that's what the infringement is. Am I correct? Well, they're creating maps, but this leads back to the claim construction issue. The way that the court interpreted the prosecution history, he read out embodiments that allow for maps to actually sit on the device. Their devices contain maps, so they're in line with that. So your view is your device can have a map but doesn't have to? Correct. Why isn't that, if your device has a map, why isn't that then anticipated by Sado? It meets every single limitation of Sado, which includes maps. Our device, and particularly Claim 1, is not focused on maps and comparing data to maps. It's focused on data collection in a particular manner. So to put it differently, Sado doesn't have section data, for instance, as our Claim 1 does. Sado doesn't do anything with the information once it's collected in stores. It doesn't make any meaningful decision about which data to keep from the travel distance data that's being logged. But you distinguish Sado by saying Sado requires a map, and we don't require a map. That's right. I mean, the significant difference is we will collect data according to the section. So you added in a limitation that you don't have to have maps. We actually did not, Your Honor. Well, isn't that, I mean, isn't that a pretty fair read in the prosecution history when you responded to Sado by saying Sado requires maps, and we don't? Actually, what we said is Sado requires an initial map to work. Our system, in the body of the claims, works whether or not a map is there. And keep in mind… Please point to me whether, where in the prosecution history it says our system works, whether or not a map is there. I believe it's in A213, which is page 13 of an office action. If we start at the top, first, Sado requires that an initial database representing road data or roadways be loaded into the system before the additional acquisition of data can take place. Sado specifically requires the steps of previously expressing each point on the roads in a map in numerical form and memorizing them as map data. Elsewhere in the application, Sado teaches a method which requires a CD-ROM or an IC card… Right, I know that passage. I mean, I've read that passage, too. Where in that passage does it suggest that your device can have a map? Because all I read in that passage is you're saying ours can be done without a map. I mean, the last, or at least the last sentence I have in that paragraph, says this can all be accomplished without the need for any initial network data, which I'm reading as a map. But there are other references to maps, either. There's no reference to our invention can work with a map in here, is there? But it actually says the opposite. And let's go back to the language Your Honor cites. This can all be accomplished without the need for an initial map. Our data acquisition occurs independently of any mapping activity. That's the distinction. And if we go back to Claim 1, it's a comprising claim. Claim 1 talks about data collection. But just to get back to my question. Sure. There's nothing in here that says your device can operate with a map. That's correct. We can work with a map and we can work without. Another way to put it is the collection is violent. You keep saying that, but this is the passage you point to me in the prosecution history that says you can work with a map, but it doesn't say anything about that. So is there anything else you have? Because it seems to me the whole point of this passage is to distinguish Theda, which works with a map, and say we work without a map. And I don't understand why that's not construed as a negative limitation. Understood, Your Honor. It's not for a couple of reasons. I think your point is well made. There's nothing there that says we can do it with a map. That's the whole point. We don't collect data based upon whether a map is there or not. But really what this is saying is we're not limiting ourselves. There's no limiting arguments here because the map is irrelevant to our technology. You're not saying you can't work with a map. Correct. You're distinguishing Theda by saying you don't need a map. That's correct. If I understand what you're saying, it wasn't necessary for you to say, well, by the way, we can use a map. That's right because we have not limited our technology in any way. But if your technology actually includes a map, it's anticipated by Theda. That's not true, Your Honor. When the map is who it is. That's not true for a number of reasons, including the fact that Theda does not create and select section data, and Theda does not continuously update the file. But that's not what you use to distinguish Theda. I mean, you use this map thing to distinguish Theda. If we were talking about something else to distinguish Theda, we wouldn't be talking about this point. But Theda, if your device, I'm only talking about the map issue, if your device uses a map, then it's anticipated by Theda. That's actually not true, Your Honor. And it's not true for a number of reasons relating to other aspects of the claim. Remember, Theda was talking about a map. Again, you didn't distinguish Theda based on those other aspects. You distinguished Theda based on the map. That is true, Your Honor. However, we did distinguish on a number of other bases, including the fact that Theda does not select section data out of travel distance. Let me ask you a hypothetical. Sure. If instead of this language, you had said in distinguishing Theda, our device does not use a map, then TomTom's products wouldn't infringe, right? Because theirs do use a map. That's correct. That would be a distinction where we have disclaimed certain technology. And that disclaimer would be an initial map database. But that's not what happened here with this language. And that's the important distinction. It strikes, we're eating up your time, but it strikes me that it's really a question of convenience as opposed to ability. Your machine has the ability to go off the map, but it's convenient to have a map. Certainly, Your Honor. And that machine cannot go off map. It cannot go to a destination without a map. It will not work. So we have other preamble issues, and we have other issues that do not relate to the preamble. Maybe I'll talk about the other aspect of the preamble. One unusual aspect. You're already past your time. Understood, Your Honor.  There is no rest. We'll give you two minutes. Thank you. Your Honor, with respect to the other aspect of the preamble, there was no basis. No, no, no. You're past your time. You're telling me to sit down. Yeah. Thank you. It's our fault. But that's how it goes. Good morning, Your Honors. My name is Brian Pandia, representing the Appley TomTom Incorporated. The district court's construction of destination tracking system of at least one mobile unit should be affirmed, and in turn, the final judgment of non-infringement should be affirmed because, as the district court recognized, a destination tracking system of at least one mobile unit does not contain initial information relating to existing road networks, unlike the TomTom devices, which always contain maps. The district court's claim construction is supported by the claim itself the specification, and the file history. The claim here is directed to a method of generating and updating data for use in a destination tracking system. So what's claimed here is a new way to generate and update data you can then use to track destinations on your mobile unit. In fact, the specification teaches that. What is TomTom shipping back to Amsterdam, and what is it producing when it does that? Well, what TomTom does is it collects the points you travel in one second or five second intervals. It just collects the starting point, and what's called a delta, or a delta delta value, the change in positions. Very cryptic data. It's not cryptic, it's basic trigonometry, angles and times. It is in that regard. So that data is collected, it's stored on the device. If the user consents to sharing the data, you can plug it into your computer, or you can upload it wirelessly. The data gets sent to Amsterdam, where it's merged with all sorts of other data sets. And then in exchange for consenting to the use of the data, you can then have certain updates to your map that are then returned to the user through the internet from TomTom's servers in the Netherlands. So for example, this helps you then decide what's the quickest way to get from point A to point B during rush hour. So all the data that gets collected on the device… How does that amalgamation of data and its then production of information not infringe? Well, there are several reasons. First of all, on the preamble issue, unlike the claimed method of generating and updating data where you work without a map preloaded to the device, the notion of collecting traffic data is an old notion. Dr. Adolf talks about a number of prior art destination tracking systems. He says in A74, typical navigation systems work by continuously analyzing the current location of a moving vehicle and comparing this position with the road network in the form of geographical data. The information can be read from the road map stored on the CD-ROM. He also describes the A74 destination tracking device which contains a facility which has collected and stored data just like the TomTom devices. But he says the problem with these devices is that the device itself cannot generate its own data. He also says that known methods… At A75, known methods and systems are based on the hypothesis that the available road network is essentially known, but the geographic data that's stored on the device, it does not accurately represent the roads. So what TomTom is doing here is fundamentally different from what Adolf claimed and described in his patent. He claimed a method for generating and updating data that you can then use all in the device itself to build your own maps. The only thing TomTom is doing here is that you collect the starting latitude and longitude and then you collect the change in position or the change of the change in the position, the delta or the delta-delta value. That data just sits on the device. It's what Dr. Adolf called, at A75, prior art traffic control system. The TomTom device simply collects data points. There's no processing of the data on the device itself. Everything happens in the Netherlands. In fact, TomTom moved for summary judgment of non-infringement on this basis in January of 2013. Dr. Adolf argued at the district court, initially to evade summary judgment, a claim interpretation that said everything has to happen inside the device. Dr. Adolf said, for example, at A274 and 275, when we're talking about Claim 1 and activity in Claim 1, which is collecting data in a particular manner and storing it and updating it in a particular manner, that's all done on the unit. It's all done according to Claim 1. At A836, Dr. Adolf has never accused any components or methods that are performed outside of a mobile unit. A272 and 73, we have an expert who points to their own witnesses' statements and to their own documents, which show that this data is collected and continuously supplemented and updated on the devices. So that was sufficient to defeat summary judgment in the first instance at the district court, but Dr. Adolf now has waived any argument to come back here and say, well, now I want a claim construction that permits me to perform certain activities outside the scope or outside of the device. The scope of the claim cannot be read. It's inconsistent not only with the specification and the file history, but with the positions that Dr. Adolf took at the district court to get around summary judgment the first time because there is this problem that the device only collects data points, does nothing with it. All the processes are happening in Amsterdam, which this court has said cannot infringe a method claim because that's outside the United States. So, I mean, Dr. Adolf argues that data collection is all that Claim 1 requires, but that's contradicted by the specification and the prosecution history at A74 and A75 that his device can do more than just collect data. It lets you go off the trail. It lets you build maps. The destination tracking systems were well-known in the prior art. Those systems all worked with maps. They generated and updated data using maps. So you can't infringe a method claim because that's outside the United States, so it's okay then to sell the infringing information back in the United States. Well, the information is not sold in the United States, and that's, I think— It's just given away. Well, that's correct. But the claim here is— And why did people buy the device? Well, they buy the device because of the maps, because it's easy to use. It helps you navigate. Not much here without the information, though. Well, the maps, though, are preloaded onto the device. Right, but you have to have the data for the device to do you any good. That's correct. We're talking about two different sets of data here. The devices come preloaded with maps. Do you advertise that it's updatable? I don't. I don't think that's a primary advertisement. I've never seen that. Really? I mean, the reason you buy this device is because it contains a preloaded map. You can turn the device on, and it helps you navigate from point A to point B. What this patent is concerned with is collecting new data points that you can then use all within the device itself to update the map. But this one works with newly collected data, too. You just get it from somewhere else. Right? I mean, if I have a TomTom device in my car, I can set it so that it tells me where the traffic is and stay away from I-95 today and that kind of thing. So in that sense, it's dynamic. You're not just using the maps that are preloaded. That's correct, but that's a completely different data set. The fact that there is different technology in the device that lets you know there's a traffic jam on Interstate 95 or on the Beltway has nothing to do with what's at issue in this case. But traffic patterns are at issue, are they not? Well, what's at issue here is a method for generating and updating data. The fact that that data may then be used to model traffic patterns or other uses, that's not actually claimed by Claim 1. What Claim 1 is, it's a method for generating and updating data. You collect travel distance data. You then identify what are the nodes in the device we talked about nodes earlier. You drop the non-characteristic points. You create a section data, and you create a section data file. From that, you can then build the maps up, and that is fundamentally different from what TomTom is doing. TomTom devices come with preloaded maps. The fact that there is some background data collection, the device itself never uses its own collected data to model what happens on the... What TomTom does. TomTom produces a traffic map, right? Well, TomTom produces a lot of maps, but that's not claimed by the patents. I mean, what TomTom is doing in the Netherlands would not be... I don't think an importation of data is an infringing act under Section 271G. I mean, that issue is not before the court, but I would submit that that is not a... You raised it. Well, we can step back here. We don't need to go to the point of whether... of even whether what is or is not an infringing act because Dr. Adolf argued in January of 2013 when we first sought summary judgment that every single step of the claim has to happen inside the device. It was at, again, A272, A73, A274, A275, A836. There is no question that Dr. Adolf took the position to get around summary judgment in the first instance that everything is happening inside the device. So Dr. Adolf can't now come up here and say, well, I want to go now argue for a broader claim construction because we would have never been here in the first instance had Dr. Adolf not taken the position that everything is happening in the device. And moreover, that is consistent with the specification which teaches the method of the invention is characterized by the fact that in a mobile unit, travel distance data are generated and are used for automatically generating a digital route network which maps the section of the route that the mobile unit is covered. There is never an automatic generation of data inside the TomTom device. It's simply latent data collection. Is the definition of node immaterial? It is not. It is not immaterial. The reason is that because as we mentioned earlier, the TomTom device simply collects points in one second or five second intervals depending on your model. And that is not collecting nodes. The district court correctly recognized that the specification teaches the definition of a node to be an intersection, an origin, a destination. It doesn't limit it that way. It also doesn't time collection in a straight line, does it not? It does not. And for two reasons. The specification refers to both points and nodes, but only nodes are claimed. Secondly, the claim itself actually refers to collecting data at a predetermined time interval. That's a separate limitation of the claim. The fact that you collect a lot of data points at a predetermined time interval, not all data points are nodes. A node is a subset of points. It's a type of point. How do we know from the intrinsic evidence that you have to have a directional change for something that constitutes a node? Well, it's in column 10 of the... It's the same authority counsel cited, so tell me why her reading of it is wrong. Well, if you look again at 878, column 10, what it says is... Characteristic route nodes PI and PK are nodes where the vehicle direction changes by more than a given predetermined value or nodes at the intersection of sections oriented in different directions or nodes that are otherwise conspicuous. That is what characteristic means. Yeah, what does otherwise conspicuous mean? Well, in the context of the invention, what you're trying to do here is recreate, use the data points you collect to recreate to build a map from scratch. So if you're driving in a straight line, that doesn't matter to you whether you're on a straight line. If the road curves, if you make a turn... Really? What if you want to go back the way you came? But the only point you then need, if the line is straight, you would just need the starting point and the ending point, because you would know that your point, your direction of travel never changed, so you just reverse the direction of travel. But if you want to look ahead, though, I mean, how do you know that if you don't have data that tells you if you go for another 10 miles, you're going to keep going in a straight line? I mean, in other words, if the node is simply to say, you know, so here you are at this particular point, the road goes straight, the road goes to the side, why is it limited to directional changes? Well, it's not limited. It can also include the origin, where you start at, your destination. It can include a change in value, so that the point is, I know where I started, where I ended, and what turns I made along the route. So it's not just limited to changes in direction. It's your starting point. So the district court said it was. So that's why I started by saying, is that an immaterial mistake? Because the claim construction says that there has to be a change of direction. That's one of three options. It has to be the starting point, the ending point, or the change in direction. Right, and so you're saying that's correct? That is correct. Those are the three circumstances in which you have a node. Not points along a straight line. Correct, because there's no reason to have a point along a straight line. A point is not a node. Well, how do we know that? I mean, what teaches us that points along a straight line are not important, or not possible? Well, if we take a look at the claim itself, what the claim refers to is you generate and store travel distance data in at least a predetermined time interval. But you're also generating traffic information at the same time. Are you not? Well, that's not reflected in Claim 1. That could be a consequence, or that could be a... Well, I'm reading from Column 10, where it gives that Christmas versus the 24th, the 26th, and the 27th. That's traffic data. That is correct, but that is not claimed by Claim 1. That is a use of why you may want to collect this data, and that's reflected in some of the dependent claims. But Claim 1 is simply you collect a lot of points at a predetermined time interval, decide which points are nodes, and then from the nodes you stitch together the route that you took to get from point A to point B, knowing that you made certain turns, there were certain curves or bends in the road, so then, as your example states, you can then use those nodes to get back, but you drop everything else that happens in between, and those processes are simply not happening. And also, if we take a look at... Wrap up, counsel. One last comment. If we look at the preceding paragraph we just took a look at, it says that you drop... It refers to compressing the travel distance data by dropping individual points, PI, and choosing those points which are most characteristic. That confirms that points are a broader concept than a node, which is only an origin, a destination, or a change in travel direction. For those reasons, as well as the fact that the claimed method of generating and updating data for use in a destination tracking system is distinguished over the prior art from such methods of generating data that worked on systems with preloaded maps. The court's judgment should be affirmed. Thank you. I'm going to give you three and a half minutes since counsel went over. Three and a half. Thank you, Your Honor. I'll try not to use all of it. Briefly on this question about what happens in Amsterdam versus here in the United States, TomTom has consistently tried to shove limitations in Claim 11 into Claim 1. When they talk about activity that occurs outside of the United States, they're not talking about data collection. They're talking about merging data collected from multiple devices and learning from that merged data. That is not what Claim 1 is about. That is what a dependent claim is about. We should not be importing that into the preamble as part of our discussion. Secondly, when we talk about TomTom's technology, all the data collection activity in the body of Claim 1 does occur on the device. Otherwise, what good is it to send it back to Amsterdam and analyze it with all of the other data? It is selected from all of the data collected as travel distance data. There are selections to get rid of data that's bad because you go under a bridge or into a tunnel. You get bad data points all the time. The selection gets rid of the bad data. That's what the second limitation in Claim 1 calls for. There's two-way communication. The individual devices communicate to Amsterdam, and then Amsterdam communicates to the individual devices. That's right. There's a feedback loop. That is why they can offer such services as HD traffic, which, as their website states and as disclosed in the summary judgment papers, provides real-time traffic updates to users. It's just not correct to say that the device doesn't gain anything from the data it collects. It does gain it after that data is compared with others and some larger traffic pattern, excuse me, information is defined. Secondly, this question about... I'm sorry, Your Honor. Third. Third, Your Honor. They sell CDs with updated maps in the United States, and they sell updated maps electronically all the time. It's not correct to say that they don't sell any information or product in the United States. As Tom Tom noted, that's outside the scope here. But most importantly, let's talk about what happens with a preamble and when it should be a limitation. There must be clear directive in the intrinsic evidence to make the entire preamble a limitation. That's not present here, and particularly with the aspect of the preamble that was never discussed in the prosecution history, and it's merely generating and storing data for use in a system. The system language is not part of the method that's Claim 1. Thank you. Thank you, counsel.